Good morning. May it please the Court. Joshua Bacharach. I represent the appellants in this case. This is an appeal from the judgment of the District Court in favor of Mr. King on an ERISA disability case. The District Court found that the plan abused its discretion in denying disability, further disability benefits to Mr. King. I think that contrary to the District Court's decision, what the Court will see is that throughout the handling of this case, the plan handled it the way that this Court would want it to. At every point in time, every benefit of the doubt was given to Mr. King. What we see here is in 1995, this claim is initially submitted. And at the time, his own doctor is saying it's going to be for a limited period of time. And they're not able to yet identify the cause of these subjective symptoms. But the claim is eventually accepted. It's originally denied because of that statement. Counsel, you characterize these as subjective symptoms. Some of them were subjective, but some were very objective. There were some that were objective, but what we have here is for each of them, there's never been a diagnosis of a physical condition. And yet we have, on the other hand, a diagnosis of a mental disorder, a mental disorder that explains all of those conditions and explains why over a seven-year period, 12 doctors were unable to identify a physical disease. And what we have originally, Your Honors, is, again, we have a claim that's paid out over four years initially without any diagnosis. And that, to me, starts off a good-faith review because they didn't just deny it because there was no diagnosis. That would be wrong. But what they did then is after four years, they said, let's look at this more. And they asked a doctor, Dr. Wallace, to look at the records. And they said, Dr. Wallace, do you see a physical explanation? And the doctor said no. But they went further. They then said, well, perhaps there's a psychiatric explanation. And they asked Dr. Fromming to conduct a neuropsychological evaluation. A psychologist, right? A neuropsychologist, yes. Not a doctor. Not a medical doctor, no. And this neuropsychologist said – This was not a medical condition. Correct. And I think I know where Your Honors headed. The district court said adopting the plaintiff's hired experts, which came in even after the appeal was done. Dr. Fromming wasn't a hired expert? Oh, of course she was. Yes. Of course. I think all of these experts, we can conclude, were hired experts. Exactly. I'm not making the point that, you know, oh, look, you know, this person's more objective than the next. I wouldn't call into question any of these doctors' qualifications. But you aimed at the point that resulted in my question. That is, the district court said, look, Dr. Fromming, A, is a psychologist, not a psychiatrist. She's not a medical doctor. She offered in her opinion that this was – because the issue is, is this exclusively psychological or is – and can you discount that it's a medical problem? And she offered an opinion on both sides of the equation, right? Well, she did. But she even said – she hedged it herself, realizing that she can't go and offer that physical diagnosis. She said – and that's why she traced it – I believe that it is somatoform disorder. But she also said you need to look at this issue of toxins. And what we then have is, again, what I think is good faith on the part of the plan and the way this court wants you to handle – not you – wants us to handle these cases is we then went to Dr. Furness, his own treating doctor, and said to the doctor, a physician, a medical doctor, what do you think? And he said, I have to agree. And the court latched on to the fact, well, the doctor then said that he's not a psychiatrist, but we had the mental illness part covered by Dr. Fromming and pursuant to the diagnosis of somatoform, that's why we went to Dr. Furness. And why did we go to Dr. Furness? I think that's a very important issue here as well. Throughout the claim, Mr. King would go to a doctor, and when that doctor would say he can return to work or I don't see how he's disabled, he stopped seeing that doctor. We saw this four times. Didn't Dr. Furness say at the end of the day he thought that King's disability had physical, not mental origins? After the denial and after the attorney then went back, yes. But what we have, though, is when we asked the doctor this question to look at the issue of Dr. Fromming's report, Dr. Furness agreed. And what's important here is, again, Dr. Furness wasn't just selected randomly. Mr. King told us, don't listen to my other doctors. They're not current. Dr. Stein's not current. Dr. Pearson's not current. They're unreliable, his term. They're unreliable. Don't listen to them. Contact, communicate with Dr. Fromming or Dr. Furness. And that's what the plan did here. And they wrote to Dr. Furness and said, do you agree? And the doctor said, I have to agree. And, again, yes, later the doctor changed Dr. Furness changed an opinion without any real reason stated. And I think in Jordan v. Northrop Grumman, this Court stated that uncorroborated, unsubstantiated, conclusory opinions by a treating doctor really aren't entitled to a whole lot of weight. Because of Dr. Pearson's opinion about Lyme's disease. That's been ruled out. The testing, there were some equivocal early tests. Apparently there are two types of tests. There's an initial test you can do, and then there's more of a serum test that's done, which is the one, that's the gold standard, and the gold standard test comes back and says he doesn't have it. And it should have responded anyway to the treatments that were given. How do you deal with Dr. Lewis, who says to give this diagnosis of mental condition, you first have to rule out all medical conditions? I agree. And so then he goes on to list all of these things that happened. For example, Dr. Lewis opined in February that there is no psychiatric, mental, nervous, or psychological disorder capable of producing fevers, night sweats, rash, lymphadenopathy, auricular eruptions on the pharynx and soft palate, a positive urinary antigen test for Lyme organism, or an abnormally elevated level of protein in something or other fluid. A lot of those were not documented by the doctors as saying, I observed. The doctors stated in their records that this is what was reported to them. And I understand there's that comment about the Lyme, but again, that was one of those preliminary tests. And when the more accurate testing was performed, it came back negative. But what I think the real question here is, Your Honor, and I think that's what caused the problem in the district court was, the district court here sat there and weighed the evidence, and it weighed only select portions of the evidence rather than all of the evidence. The district court essentially took the report of Dr. Lewis and the report of the other expert and quotes verbatim in large sections of the opinion, ignoring evidence that we provided. The question under this standard of review is based on the evidence whether a reasonable person could accept the conclusion that was reached by the plan. And what is that substantial evidence that's here? Well, you have the fact that somatoform disorder explains why no doctor in seven years was able to find a cause. We have the doctor agreeing, his own doctor agreeing to that. We have Mr. King accepting that diagnosis. He doesn't appeal to it. Well, frankly, it's not an appeal issue because they just said we're going to, we find the 24-month limit applies. But he doesn't object to it at first. He waits until near the end of the benefit period to object to it. What he does do is he takes that report of Dr. Fromey, he gives it to the Social Security Administration, and that judge says, I don't find any evidence of a physical disease. I agree with this doc. This explains everything. And the Social Security Administration, I understand that's not binding, but it's persuasive, and the fact is the Social Security Administration doesn't care what the basis for the claim is as long as you're disabled. So they didn't need to find it being a mental illness. That's irrelevant. The question is whether he's disabled. You also have the district court ignores other evidence, other evidence including Dr. Wallace, who reviewed the medical records and looked for a physical cause and found none. The fact that she said that Dr. Fromey is the only one who found this mental illness, that's not true. You also have Dr. Hasham, who found an affective disorder, and the district court fails to mention that. So there's substantial amount of evidence here. I think one of the keys to me, Your Honor, and it demonstrates how the district court erred, is the district court said in awarding fees to Mr. King that even though nobody's been able to find a diagnosis, his treating doctors still say it's a physical condition, therefore you should have continued to pay benefits on it. Well, doesn't that sound like the treating physician rule? That doesn't apply. Wasn't there a diagnosis that this was probably fibromyalgia? Fibromyalgia-like syndrome. It was fibromyalgia-like. There was never a definitive diagnosis of fibromyalgia. So that takes us away from that line of cases that counsel has urged, which say that you can't question the ideology of something that is a subjective disorder. That's not this case. There is no diagnosis. The district court says it in its brief, in its opinion, that there has been no firm medical diagnosis. Mr. King states in his brief that there has been no firm medical diagnosis. Instead, what you do have, though, is this psychological condition, which has been identified and explains everything. Well, the psychological condition is premised on there not being a medical explanation. Isn't it kind of a negative diagnosis? It's not a negative diagnosis. I mean, there are conditions that are ruled out by exclusion, such as fibromyalgia. But that's not done here. This isn't a case where there's a diagnosis and the plan disagrees. There is no diagnosis of a physical condition, period. There is none. Did you want to save any time for rebuttal? I would like to save some time. Sure. But in just a few seconds, what I found also significant, Your Honor, we cited a case called Siebert v. Standard & Insurance Company, a district court case. We understand it wasn't binding on that court, certainly not on this court. Dealt with the same facts, exactly the same facts. And that judge applying the law, which this judge didn't even really cite in her opinion, found for the plan. And the district court failed to even mention that or distinguish why that case didn't apply here or why that case should be found in favor of the plan, but this one not. And there was one significant difference, though, between Siebert and our case. The treating physician rule did apply back then. And the court said notwithstanding the treating physician rule, we still find in favor of the plan. So I find it hard to reconcile the two. And I'll save the remaining time for rebuttal. Thank you, counsel. Thank you. Mr. Baum. May it please the Court. My name is Julian Baum. I'm here on behalf of Plaintiff John King. I don't remember if it was Mark Twain or Finley Peter Dunn who said, a man has every right to be mistaken in his opinions but not in his facts. There are a few things that I need to address right away before I get to the heart of my argument. First of all, as Judge Fletcher pointed out, there was a diagnosis, a definite diagnosis of fibromyalgia. The rheumatologist Peter Stein, Professor Ken Sack at the University of California, both said, whatever else is going on, this man has severe fibromyalgia. I think the quote is, you're entitled to your own opinions. You are not entitled to your own facts. If I've gotten the quote wrong, I defer to the Court and appreciate the ---- I have no idea who said it. I'm sure it was said more colorfully than I have presented it. Go ahead. Number one, there was a diagnosis in that the doctors have been scratching their heads for years, but one thing that they've agreed on is, well, whatever else is going on, he has fibromyalgia, as diagnosed by the standards established by the American College of Rheumatology. That diagnosis was made by board-certified rheumatologists and a professor of medicine and a doctor who is both board-certified in rheumatology and a professor of medicine at UCSF. Your opponent said that the actual conclusion was fibromyalgia-like. Is that right? That is not correct. In fact, Dr. Stein, if I remember, I'm afraid to try to quote now, seeing that my memory is not as good as I thought it was, said, his patient has severe fibromyalgia, period. Dr. Kenneth Sachs said he has fibromyalgia. Frankly, I don't know what counsel is referring to, but that is in the record, and the Court can satisfy itself on that. As far as Dr. Wallace, the only thing that I have in the record here is at Excerpts of Record 147, where it is a one-page memo in July of 1998 from Kathleen Wallace, M.D., to Lou Anne Morse. It's a very short memo, but here's what it says at the end. Overall, claimant has a multitude of somatic symptoms, but there is no objective evidence of resulting impaired function. Therefore, the record does not support diminished functional capacity. This is not a doctor saying this is a mental condition. This is a doctor saying, well, I don't see any objective medical evidence of impairment, something that later even the insurance company had to acknowledge was really not at issue. They fought that fight, gave it up, and then decided maybe we need to fight this on a psychiatric issue. Now, to get to the heart of my argument is very brief. The district court didn't err, and the appeal of the district court's decision doesn't demonstrate error. Defendant's argument, in essence, is we really, really, really, really, really disagree with the district court and her findings of fact. Well, one of the arguments your opponent makes has a ring of sense to it, and I'd like you to address it. And that's the argument that the touchstone of deciding whether benefits were improperly terminated is the good faith of the disability provider. And in this instance, the disability provider went to your client's own treating physician who told them it's not physical. Now, how do you respond to that? That they've gotten a quarter of the way there, but not all the way. Good faith is, with respect, not the issue, but rather whether they abused their discretion, whether they employed the proper procedures, whether they did the proper investigation. What's wrong with asking the disability claimant's own treating physician? Not a thing. Not a thing. There's nothing. In fact, I would argue that that was something that they absolutely should have done. His treating physician, however, one of his primary physicians was a family practice doctor. Now, what they point to is they gave him Dr. Fromming's analysis, by the way, which doesn't say it's a mental condition. It says, I think it's probably a mental condition, but I suggest further testing. And they gave it to Dr. Furness, the primary care physician, who said, well, I'd have to agree, but I'm a little hesitant to weigh in here because I'm only a family practice physician. So in the very same breath in which he is telling them, well, it looks like you've got something here, he's saying, but don't count on me because I'm a family practice physician and we're dealing with something a little bit beyond what I can confidently address. Now, they take the first part of it and disregard the second. So I agree with Your Honor, they absolutely should have, and acted in good faith in sending the report to the family practice physician. But they couldn't stop there when they got something that they liked. Similarly, when one steps back a little bit, what we see is we have a dozen doctors over the course of years, doctors from all sorts of specialties, who are saying, in essence, I'm not quite sure what's going on here, but it's physical. And that includes two psychiatrists who are saying it's not psychiatric. Now, weighed against that, we have the report of a psychologist, Dr. Fromming, who says, I'm not sure. And this is something the district court pointed out. She gave her best opinion, as it was perfectly appropriate to do, and was also perfectly appropriate for her to state the limits of her opinion, which she did, and said, I'm not sure, I suggest further testing. And testing, by the way, that she even recognized was beyond her expertise, exposure to toxic chemicals, electromyographic potentials, things like that. It is an abuse of discretion, I respectfully submit, when you have a number of doctors, when you have a number of specialists who are saying it is a physical condition, and you have to weigh against that, you have to consider an equivocal report from a psychologist. As the district court found, that while we're not talking in terms of bad faith or intent, it is an abuse of discretion as this court has defined it. It is clearly erroneous. What is measured, as I disagree with Pellant's argument, that in essence the district court has to accept the facts as the plan administrator finds them. The district court is charged under ERISA with examining the records to decide whether the, even under an abuse of discretion standard, whether the administrator has committed clear error, not bad faith, not intentional wrongdoing, whether they've gotten it wrong. And that's a, even under an abuse of discretion standard, and even under the most recent opinion of this court in Jordan, that is, that standard is clear error. Now, in this appeal, defendants and appellants have not, not only have not demonstrated error, I don't think there's a serious attempt to show that the district court erred in that analysis, but rather to say if it were being conducted by this court as a new trier of fact, they'd want to present those arguments and that these judges should see it differently than the district court did. Frankly, that just ignores the standard of review in this court. However, even if this court were looking at it freshly as a new trier of fact, they still can't get around the facts of the record, that you have specialist doctors, including psychiatrists, saying this is not a psychiatric illness, rheumatologists saying whatever else it is, it's disabling fibromyalgia, and weighed against that, the only thing they have is a report from Dr. Fromming who says, well, it might be psychological, but I can't tell you that definitively without further testing. If that's not an abuse of discretion, Your Honor, frankly, I don't know what is. I'm not claiming bad faith. I've never in this case urged that defendants acted out of animus or out of anything other than trying to understand the claim, but it wasn't handled properly, and when they terminated the claim, it wasn't done for sound medical reasons. Now, the last point I'll make is that the district court didn't ignore their evidence or their view of the facts. It considered their arguments, it considered the evidence, and it came to different conclusions. That is the essence of what a trial court does, and that is not assignable as error, absent of showing that the district court clearly erred in that. Now, that they simply haven't done, and even if this court were acting as a new trier of fact, the record here is rather overwhelming. This gentleman is suffering from a physical illness. Even the best specialists can't say definitively what it is and how best to help him, but they say whatever else is going on, he has disabling fibromyalgia, and it is not psychosomatic or psychogenic. Thank you, Your Honor. I stand ready to address any questions that the court has. I don't see any. Thank you for your argument, counsel. We'll hear rebuttal at this time. Thank you. Counsel again keeps using the term psychosomatic. He's trying to distract the court. It's not psychosomatic. It's somatoform disorder, and I find it offensive that counsel repeatedly makes that argument. Now, he said he doesn't know what I'm referring to when I talk about this fibromyalgia-type pain syndrome rather than a specific diagnosis. It's right there in his own record excerpts, page 52 of the appellee's record excerpts. Dr. Stein, who is one of the doctors he referred to, fibromyalgia-type pain syndrome. It's right there in the record. Let's look at Dr. We then have another one of his doctors who he said, Dr. Sack. Well, I've got Dr. Sack's report. This is the one dated March 28, 2002, the most recent one, I believe. It's a lengthy report to Dr. Lewis, three pages here, and one thing that's not mentioned anywhere in here is a diagnosis of fibromyalgia or fibromyalgia-type pain. So Dr. Sack doesn't say that, contrary to what counsel said. So if the only thing you're relying on is Dr. Stein's statement, well, you have in our record excerpts, 116, you have Mr. King writing to us saying that Dr. Pearson as well as Dr. Stein are not current with respect to my symptoms. Dated statements by them are inaccurate and misleading. That's why we went to Dr. Furness, who he told us to go to. Counsel says it's arbitrary and capricious because you had doctors saying that it's physical. Well, again, that's the treating physician rule. That doesn't apply. Also in Jordan v. Northrop Grumman, this Court stated in almost every one of these cases you have conflicting evidence. That doesn't make it arbitrary and capricious either. The question is whether a reasonable person, and he's trying to switch the burdens here, whether a reasonable person could reach the same conclusion as the plan reached. And here an administrative law judge did. And, of course, a reasonable person could. Your Honor, Judge Fletcher, in the Nord case, when that came back to you a few months back, you said that the only thing that allowed that plaintiff to win the first time was the treating physician rule, and that no longer applies, therefore that claimant can't win. It's the same thing here. And counsel says, well, you still have doctors who are saying it's physical, and the district court said you still have doctors saying it's physical, therefore it's an arbitrary and capricious decision. How many years do you have to wait for a diagnosis? Seven years, 12 doctors, none of them can come up with a diagnosis. That explains the condition. Enough's enough. Thank you, Your Honor. Okay. Thank you for your argument. Thank both sides for their argument. The case disargued will be submitted for decision. And we'll turn to the last case on the calendar this morning, Germain Music et al. v. Universal Songs.
judges: Lay , B. Fletcher, Hawkins